UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STANLEY BLACK & DECKER, INC., <br><br> Plaintiff, <br><br> -against- <br><br> TRANSFORM HOLDCO, LLC (t/a SEARS), <br><br> Defendant. | Docket No. <br><br> **COMPLAINT** |

Plaintiff, Stanley Black & Decker, Inc. ("Stanley"), by and through its undersigned counsel, hereby files suit against Defendant, Transform Holdco, LLC (t/a Sears) (hereinafter "New Sears"), and alleges as follows:

## NATURE OF THE ACTION

1.      Stanley brings this suit to protect its CRAFTSMAN® brand and its business from imminent and irreparable harm resulting from New Sears' willful breach of a trademark license agreement and related acts of infringement and commercial disparagement of Stanley's CRAFTSMAN® marks.

2.      On January 5, 2017, for a purchase price in excess of $900 million, Stanley acquired certain assets of Sears Holding Corporation ("Old Sears"), including, but not limited to, all right, title and interest in the CRAFTSMAN® brand and related trademarks.

3.      By virtue of its acquisition of the CRAFTSMAN® brand, Stanley obtained the right to make, use and sell CRAFTSMAN®-branded products anywhere in the World outside of certain limited retail channels that were reserved to Old Sears and its affiliates pursuant to an Acquired IP License Agreement dated March 8, 2017 (the "License Agreement") (attached hereto as **Exhibit 1**).

4.     Under the License Agreement, Stanley granted back to Old Sears the limited right to continue to make, use and sell certain categories of products under the CRAFTSMAN® brand in its own retail stores and on certain other retail platforms owned and/or operated by Old Sears or its affiliates.  In so doing, however, Stanley maintained control of the brand's identity by requiring Old Sears to conform and limit its use of the licensed CRAFTSMAN® marks to an agreed set of brand guidelines and other restrictions, including, but not limited to, prohibitions against using any sub-brands or otherwise altering or combining the licensed marks with other words or marks.

5.     As the brand owner, Stanley's right to maintain control of the CRAFTSMAN® brand under the License Agreement is essential to Stanley's ability to strategically plan for and position the CRAFTSMAN® brand in new distribution and retail channels of trade over time.

6.     Shortly after the acquisition, Stanley invested heavily in the CRAFTSMAN® brand with a focus on quality, innovation and domestic manufacturing, and toward the goal of rapidly increasing sales of the brand through new distribution and retail channels.

7.     In the interim, Old Sears and certain of its affiliates (collectively the "Bankrupt Debtor") filed for protection under Chapter 11 of the United States Bankruptcy Code in an action captioned *In Re Sears Holdings Corporation, et al.*, Case No. 18-23538 (Bankr. S.D.N.Y.) (the "Bankruptcy Proceedings").

8.     During the course of the Bankruptcy Proceedings, defendant New Sears purchased at auction certain assets from the Bankrupt Debtor, including, *inter alia*: 425 retail stores operated under the SEARS® and KMART® brands and Old Sears' limited rights to the CRAFTSMAN® brand under the License Agreement.  By Order dated February 8, 2019, the bankruptcy court approved the sale of these assets to New Sears.

2

9.      Two weeks later, by press release dated February 21, 2019 (attached hereto as **Exhibit 2**), New Sears launched its own new line of professional-grade mechanics' tools under the sub-brand "Craftsman Ultimate Collection." In so doing, New Sears touted its stores and other retail platforms as "the *__real__* home of the broadest assortment of Craftsman." (Exh. 2) (emphasis added).

10.     As explained below, New Sears' launch of its new line of mechanics' tools under the "Craftsman Ultimate Collection" sub-brand constitutes a direct and material breach of the License Agreement.

11.     Moreover, by touting itself as "the *__real__* home of the broadest assortment of Craftsman," New Sears falsely implies that only products carried in New Sears' retail stores and other retail platforms are genuine CRAFTSMAN® products or that the sale of CRAFTSMAN® products elsewhere is somehow illegitimate. Thus, New Sears' new tagline, in further breach of the License Agreement, disparages the CRAFTSMAN® products now being marketed and sold by Stanley through other retail channels, and dilutes and tarnishes the value of the famous CRAFTSMAN® trademarks for which Stanley paid hundreds of millions of dollars to acquire.

12.     New Sears' misconduct as detailed in this Complaint threatens to, has caused and/or will cause customer confusion and, therefore, constitutes infringement and dilution of the Licensed Marks and acts of unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and unlawful commercial disparagement in violation of New York law.

13.     New Sears' breach of contract and other unlawful conduct poses an imminent threat of irreparable harm to Stanley, its Craftsman brand and mark, its goodwill and advantageous business relationships with its customers. The longer the "Craftsman Ultimate Collection" is permitted to be advertised, marketed and commercialized by New Sears, the

3

greater the harm that this unlawful sub-brand will impose on the reputation, value and prestige of the CRAFTSMAN® brand in the marketplace and on Stanley's ability to control its brand in the future.

14.    Unless temporarily restrained and preliminarily enjoined by this Court, Stanley will continue to suffer the irreparable harm occasioned by New Sears' conduct.  Therefore, to prevent such irreparable harm, enforce its contractual rights and protect its marks, Stanley files this suit seeking a temporary restraining order and further injunctive relief enjoining New Sears' advertisement, marketing and sale of products under the prohibited "Craftsman Ultimate Collection" sub-brand and its further acts of trademark infringement and dilution, unfair competition, and commercial disparagement.

## PARTIES

15.    Plaintiff, Stanley Black & Decker, Inc. is corporation organized and existing under the laws of Connecticut with its principal place of business located at 1000 Stanley Drive, New Britain, Connecticut 06053.

16.    Defendant, Transform Holdco, LLC, is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at 1170 Kane Concourse, Suite 200, Bay Harbor, Florida 33154.  The sole member of Transform Holdco, LLC is ESL Investments Inc., a corporation organized and existing under the laws of Delaware, with is principal place of business located at 1170 Kane Concourse, Suite 200, Bay Harbor, Florida 33154.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action:

4

       a.      pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the laws of the United States;

       b.      pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties;

       c.      pursuant to 28 U.S.C. § 1338(a) & (b) and 15 U.S.C. §1121, as this civil action arises under Acts of Congress relating to trademarks and asserts claims of unfair competition joined with substantial and related claims under the federal trademark laws; and

       d.      pursuant to 28 U.S.C. § 1367, as the federal and state law claims asserted herein are derived from a common nucleus of operative facts.

18.     This Court has personal jurisdiction over defendant New Sears pursuant to the New York Long-Arm Statute, N.Y. C.P.L.R. § 302(a) (as applicable to these proceedings under Rule 4 of the Federal Rules of Civil Procedure) and the Fourteenth Amendment of United States Constitution because:

       a.      by taking an assignment and assumption of the License Agreement from Old Sears, New Sears "irrevocably submits to the jurisdiction of any New York state or federal court in any Action arising out of or relating to this Agreement, and irrevocably agrees that all claims in respect to such Action may be heard and determined in such New York state or federal court." (Exh. 1, § 19(f)(ii)); and

       b.      New Sears owns and/or leases property in, is found, transacts and/or is doing business in and otherwise maintains minimum contacts with the State of New York.

19.     Venue in this Court is proper under 28 U.S.C. § 1391(b), because New Sears resides in and a substantial part of the events giving rise to this action occurred in this judicial district.

5

## FACTS COMMON TO ALL COUNTS

20.     Stanley is a global manufacturer and supplier of, among other things, consumer and professional hand tools, power tools, lawn-and-garden equipment, and garage and storage equipment under multiple brands.

21.     In 2016, Stanley identified CRAFTSMAN® as an additional brand to complement its existing portfolio.  For nearly a century, Old Sears had marketed and sold in its retail department stores and elsewhere multiple lines of hand tools, power tools, lawn-and-garden equipment, storage and garage products and other products under the CRAFTSMAN® brand. Over that time, the CRAFTSMAN® brand developed a high-level of consumer awareness and goodwill built on a legacy of being reliable products sold at a good value and backed by solid warranties.

22.     The fine reputation and goodwill associated with CRAFTSMAN® and its related marks made it valuable and desirable to Stanley.  In fact, as reflected in recent press coverage (an example of which is attached hereto as **Exhibit 3**), the CRAFTSMAN® brand is often described as "iconic" and widely recognized as "famous."  (Exh. 3).

23.     Pursuant to a Purchase and Sales Agreement dated January 5, 2017 (the "PSA") (pertinent excepts of which are collectively attached hereto as **Exhibit 4**), Stanley acquired from Old Sears certain assets, including, but not limited to, all right, title and interest in the CRAFTSMAN® brand and "all registered Intellectual Property associated with that brand, including the patents, copyrights, and trademarks collectively defined in the Purchase Agreement as the "Acquired Business Intellectual Property." (Exh. 4).

A.     **The Terms of the License Agreement**

6

24.     In connection with the PSA, Stanley licensed the Acquired Business Intellectual Property (the "Licensed IP") back to Old Sears, its "Affiliates" and certain "SHO [Sears Hometown and Outlet] Entities" for the sole purpose of enabling them to carry on that portion of their businesses not acquired by Stanley (the "Retained Business"). (Exh. 1, §§ 1, 2(a)).

25.     Subject to certain contractually specified limitations, qualifications and exceptions, the License Agreement provides in pertinent part:

> STANLEY hereby grants, . . . to SEARS and each of its Affiliates, a . . . license of the Licensed IP, to make, have made, use, market sell, offer to sell, import, export, distribute and otherwise dispose of *Licensed Products*, in each case solely for the purpose of enabling: (i) Sears and its Affiliates to carry on the Retained Business and the (ii) SHO Entities to carry on their businesses; provided however, that such license with respect to sales, shall be limited solely through the *Channels of Retail Trade* and solely via Selling Formats . . . . For avoidance of doubt, SEARS shall have no right or license to sell Licensed Products to Excluded Retail Channels.

(Exh. 1, § 2(a)) (emphasis added).

26.     Under the License Agreement, the "Licensed Products" included "all and any Hand Tools, Power Tools, Lawn and Garden Equipment, Storage and Garage Products and other Products, in each case manufactured or sold using (in whole or in part) the Licensed IP . . .." (Exh. 1, § 1).

27.     Although "Licensed Products" include those products that were already being sold by Old Sears, its Affiliates and/or the SHO Entities at the time of the acquisition, the License Agreement acknowledges that:

> SEARS and its Affiliates have the right to innovate, design, market, sell, distribute, license and otherwise commercialize Licensed Products, including Licensed Products that do not yet exist as of the Effective Date (*in each case in accordance with this Agreement*); provided that such rights with respect to the Licensed Marks shall not survive the termination or expiration of this Agreement.

7

(Exh. 1, § 2(k) (emphasis in underline in original) (emphasis in bold and italics added). Thus, Old Sears and its related licensees have the right to develop and release new Licensed Products under the CRAFTSMAN® brand, as long as their marketing, sale and commercialization of those new Licensed Products are limited to the permitted "Channels of Retail Trade" and otherwise comply with the License Agreement.

28.     As further defined in the License Agreement,

> 'Channels of Retail Trade' means solely the following: (i) within the Retail Territory (A) standalone retail stores having a combined average store size of five thousand (5000) square feet or higher and operated under a 'Sears' or 'Kmart' brand, or a derivative thereof, (B) SHO Entity standalone retail stores or (C) the SHS Channel; and/or (ii) any other E-Commerce Channel.

(Exh. 1, § 1). The permissible "SHS Channel" and "Ecommerce Channel" are online and other retail platforms owned or operated by Old Sears and its related licensees as part of the Retained Business that they continued to operate post-acquisition.

### 1.     *Contract Provisions relating to the Licensed Marks*

29.     When selling Licensed Products through these permitted Channels of Retail Trade, Old Sears and its related licensees were permitted to use the "Licensed Marks" defined as, "[T]he names, symbols, logos, slogans, trademarks and design elements identified on Schedule A." (Exh. 1, § 1).   Schedule A, in turn, identifies the Licensed Marks as:

> 1. CRAFTSMAN®
> 2. The CRAFTSMAN logo
> 3. Each of the names, symbols, logos, slogans, trademarks and design elements set forth in Attachment G (Craftsman Trademarks) to the Seller Disclosure Letter, [which] is incorporated herein by reference
> 4. Those certain other trademarks, names, titles, logos and symbols relating to the Craftsman brand that STANLEY may from time to time authorize SEARS to use pursuant to this Agreement.
> 5. Common law rights in any of the foregoing.

(Exh. 1, Sch. A thereto).

8

30.    Among the Licensed Marks on the referenced Attachment G to the Seller Disclosure Letter, as restated in a second amendment to the PSA (attached hereto as **Exhibit 5,**), is the well-known CRAFTSMAN® Shield, pictured below. (Exh. 5).



31.    Significantly , "Craftsman Ultimate Collection," as now being used by New Sears, is not a Licensed Mark. (Exh. 5). Furthermore, at no time did Stanley authorize Old Sears or New Sears to use phrase "Craftsman Ultimate Collection" or "Ultimate Collection" in connection with its sale of Licensed Products.

32.    The License Agreement provides that:

> SEARS agrees not to use any trademark or service mark *other than the Licensed Marks* or *any subbrands* in connection with the Licensed Products or *in combination with the Licensed Marks* without prior approval of STANLEY, and SEARS agrees *not to use or create composite marks* using the Licensed Marks without prior written approval of STANLEY.

(Exh. 1, § 7(c)) (emphasis added).

33.    The License Agreement further provides that:

> SEARS will not (a) *modify the Licensed Marks* in any form or manner unless approved in advance in writing in each instance by STANLEY; or (b) *combine the Licensed Marks* with any other trademark, brand, logo or source identifier.

(Exh. 1, § 7(e)) (emphasis added).

34.    Moreover, the parties agreed that:

9

> Neither [of them] will directly or indirectly make any statement or do any act that *disparages*, degrades, misuses, *tarnishes*, *dilutes* or *adversely affects* or *creates any negative inference* as to the reputation, prestige, value, image or impression of the Licensed Marks. . . .

(*Id.*) (emphasis added).

### 2.   *The Brand Guidelines*

35.   Under the License Agreement, "[a]ll Licensed Products using the Licensed Marks must accord with the Brand Guidelines . . ., including with respect to the inclusion of trademark legends, where applicable. . . ." (Exh. 1, § 5(a)).

36.   The Brand Guidelines (pertinent excerpts of which are attached hereto as **Exhibit 6**), as they relate to "Marketing Execution" provide "a frame of reference for everything from logo and type usage, to campaign initiatives and online guidelines . . . to help maintain a consistent brand identity across all touch points." (Exh. 6, p. 23).  With respect to marketing logos, "these guidelines help ensure a consistent customer experience." (*Id.* at p. 24).

37.   The Brand Guidelines provide, in pertinent part:

- When used in copy, the Craftsman mark should be set apart from the rest of the text by being placed in all capital letters or in bold." (p. 21, # 3)

- Always use the Craftsman logos exactly as provided, including the ® notification. (p. 21, # 5)

- Never alter a trademark. (p. 21, # 7)

- Do not combine your marks or any third-party marks with any Craftsman marks. (p. 21, # 8)

- You may not use any Craftsman trademark as part of an advertising slogan, promotion, tagline, event communication or similar phrase without express written consent. . . . (p. 21, #10).

10

38.     In addition to not being a Licensed Mark under the License Agreement, "Craftsman Ultimate Collection" also does not appear anywhere in the Brand Guidelines as a sub-brand.

39.     This is in contrast to, for example, the CRAFTSMAN® Pro Series, which New Sears is authorized to sell under and is described by the Brand Guidelines as "a premium product platform within the Craftsman brand structure" - - *i.e.*, a sub-brand. (*See* Exh. 6, pp. 94-100).

40.     By virtue of the contractual restrictions on Old Sears' use of the Licensed Marks and the requirement that Old Sears comply with the Brand Guidelines, it is Stanley, as the owner of the CRAFTSMAN® brand, and not New Sears, the licensee, that retains control over the brand's identity as it evolves and expands into new distribution and retail channels.  This right to control the CRAFTSMAN® brand (for which Stanley paid hundreds of millions of dollars) is essential to Stanley's ability to strategically plan for and position the CRAFTSMAN® brand in new and additional distribution and retail channels of trade over time.

### 3.  Other Provisions of the License Agreement

41.     In agreeing to the terms of this limited license, Old Sears recognized and acknowledged:

> (i) STANLEY's ownership rights in the Licensed IP; (ii) the great value of the publicity and goodwill associated with the Licensed IP are valuable assets belonging STANLEY; (iii) that all rights in and to the Licensed IP are and shall remain the sole property of STANLEY; and (iv) that SEARS' right to use the Licensed IP shall be governed exclusively by this Agreement and applicable law.

(Exh. 1, § 7(a)).

42.     The parties further acknowledged that with the exception of certain exclusivity rights relating to the sale of Licensed Products by SHO under Section 2(h) of the License Agreement:

11

> Nothing in this Agreement shall in any way limit or restrict STANLEY'S right, either itself or through third-parties, to use, advertise, promote, license or otherwise exploit the Licensed IP in any manner whatsoever.

(Exh. 1, § 2(b)).

43.     The License Agreement further provides:

> **Specific Performance**: The Parties hereby acknowledge and agree that monetary damages, even if available, would not be an adequate remedy in the event of an actual or threatened material default in, or material breach of, any of the terms, conditions, and provisions of this Agreement. The non-breaching Party shall have the right of specific performance or injunctive or other equitable relief under this Agreement, in addition to any and all other rights and remedies at Law or in equity, and all such rights and remedies shall be cumulative.

(Exh. 1, § 19(e)).

44.     The License Agreement is governed by New York law, and the parties have contractually consented to jurisdiction in this Court. (Exh. 1, §§ 19(f)(i), (f)(ii)).

**B.     Stanley's Post-Acquisition Investment and Promotion in the CRAFTSMAN® Brand**

45.     Shortly after the acquisition, Stanley invested heavily in the CRAFTSMAN® brand with a focus on quality, innovation and domestic manufacturing, and toward the goal of rapidly increasing sales of the brand through new distribution and retail channels.

46.      Toward that end, in May of 2018, Stanley announced a major strategic alliance with Lowes Companies, Inc. ("Lowes") to carry certain lines of CRAFTSMAN® products supplied by Stanley including, but not limited to, a new line of mechanics' tool sets, tool storage chests and drawer cabinets, and garage organization separates.

47.     Later in September of 2018, Stanley announced the launch of a full-line of CRAFTSMAN® tools, equipment and accessories, including the introduction of over 1200 new tools and products to be released over the next year across multiple distribution and retail channels, including, but not limited to, Lowes, Ace Hardware and Amazon.com.

48.     In connection with these and other initiatives, Stanley sought to capitalize on the fine reputation and substantial goodwill associated with the famous CRAFTSMAN® brand as it repositioned the brand through additional distribution and retail channels.  In so doing, Stanley released new CRAFTSMAN® products that remained true to the standards of reliability and affordability that have become synonymous with the brand, while introducing certain enhanced technologies and innovations not previously offered in the lines of legacy CRAFTSMAN® products offered by Old Sears prior to and after the acquisition.

**C.     New Sears' Purchase of the License Agreement out of Bankruptcy**

49.     Notwithstanding the large infusion of funds resulting from the sale of the CRAFTSMAN® brand to Stanley, the Retained Business of Old Sears and its Affiliates continued to struggle financially.

50.     On October 15, 2018, Old Sears and its affiliates filed for protection under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Proceedings.

51.     At an auction during the course of the Bankruptcy Proceedings, defendant New Sears took an assignment and assumption of all rights and obligations of Old Sears under the License Agreement, as approved by the bankruptcy court by Order dated February 8, 2019. *See* Bankruptcy Proceedings, ECF No. 2507.

52.     By virtue of this Order, New Sears is now responsible for complying with the terms of the License Agreement.

**D.     New Sears' Misconduct in Material Breach of the License Agreement and in Violation of Stanley's Intellectual Property Rights**

53.     Stanley has performed and continues to perform its obligations under the License Agreement.

13

54.     Two short weeks after assuming the License Agreement, New Sears embarked upon a plan to deprive Stanley of the benefit of its bargain under the License Agreement.

55.     By press release dated February 21, 2019, New Sears announced its launch of a new line of professional-grade mechanics' tools under the sub-brand "Craftsman Ultimate Collection" offered "exclusively at Sears stores, online at Sears.com and at Sears Hometown stores." (Exh. 2). According to the press release, "The Craftsman® Ultimate Collection features the most sought-after tools, hand-picked by mechanics, available only at Sears." *Id*.

56.     In explaining its new sub-brand of CRAFTSMAN® products, the press release identified, "a few products in the Craftsman Ultimate Collection" including: (i) "Craftsman Ultimate Collection 104 pc Mechanics Service Set;" (ii) "Craftsman Ultimate Collection 220 pc Mechanics Service Set;" and (ii) "Craftsman Ultimate Collection 302 pc. Mechanic's Service Set." (Exh. 2).

57.     At no time did Old Sears or New Sears request—or Stanley authorize—the use of the phrase "Craftsman Ultimate Collection" or "Ultimate Collection" in connection with its sale of Licensed Products.

58.     Accordingly, in each instance, the new products referenced to in the press release are identified as part of an unauthorized sub-brand called "Craftsman Ultimate Collection" in direct and material breach of Section 7(c) of the License Agreement.

59.     In further breach of Section 7(c) of the License Agreement, this new unauthorized sub-brand of products is further supported by its own advertising, marketing materials, packaging and product labels.

60.     As reflected on Sears.com (pertinent excepts of which are attached hereto as **Exhibit 7**), there is a separate "Craftsman Ultimate Collection" page that identifies, advertises

14

and sells the newly launched line of mechanics' tools as its own sub-brand of CRAFTSMAN® products that are separate and distinct from other CRAFTSMAN®-branded products that New Sears offers for sale:



(https://www.sears.com/tools/b-1020000 (last visited March 3, 2019)).

61. Again, each individual product in the new line is specifically identified by use of the phrase "Craftsman Ultimate Collection" in the following fashion:



(https://www.sears.com/dewalt-3-1-2-in-hole-saw/p-A028767586?sellerId=SEARS&prdNo=9&blockNo=9&blockType=G9 (last visited March 3, 2019)).

15

62.     Similarly, as reflected in **Exhibit 8** attached hereto, packaging and labels for each of the new line of products specifically identify it as part of the "Craftsman Ultimate Collection" sub-brand in material breach of License Agreement. (Exh. 8). For example, packaging and labels for products in the new line show the CRAFTSMAN® Shield improperly used in combination with the words "Ultimate Collection" as follows:



63.     In further violation of Section 7(e) of License Agreement and the incorporated Brand Guidelines (Exh. 6, p. 21, # 7 & 8), the name "Craftsman Ultimate Collection" improperly alters and combines the licensed CRAFTSMAN® mark and CRAFTSMAN® Shield with the words "Ultimate Collection" so as to create a new, unlicensed composite mark for the unauthorized sub-brand of CRAFTSMAN® products.

64.     Moreover, in connection with the launch of its new sub-brand of CRAFTSMAN® products, New Sears now touts its stores and other retail platforms as "the ***real*** home of the broadest assortment of Craftsman." (Exh. 2) (emphasis added).

65.     At no time did New Sears or Old Sears request permission to use this slogan or tagline in connection with the advertisement, marketing or sale of Licensed Products, as required

16

under the License Agreement, or Stanley otherwise authorize New Sears or Old Sears to use this slogan or tagline in connection with the Licensed Products.

66.     Not only does New Sears' unauthorized use of this new slogan or tagline utilizing the CRAFTSMAN® mark violate the Brand Guidelines (Exh. 6, p. 21, #10), but it falsely implies that only products carried in New Sears' Channels of Retail Trade are genuine CRAFTSMAN® products or that the sale of CRAFTSMAN® products elsewhere is somehow illegitimate.

67.     Thus, New Sears' use of this new slogan or tagline goes far beyond the limits of permissible comparative advertising under Section 7(e) of the License Agreement.  Rather, it tarnishes, disparages or otherwise creates a negative inference relating to CRAFTSMAN® products that are currently being marketed and sold by Stanley through other retail channels, so as to dilute the value, reputation and prestige of the famous CRAFTSMAN® trademark, in direct and material breach of Section 7(e) of the License Agreement.

68.     In addition to its material breach of the License Agreement, New Sears, by and through actions taken in connection with its new "Craftsman Ultimate Collection," is infringing and diluting the Licensed Marks and unfairly competing in violation of the Lanham Act, and engaging in unlawful commercial disparagement in violation of New York law.

**E.     The Imminent Threat of Irreparable Harm to Stanley and Likelihood of Confusion**

69.     As a direct and proximate result of New Sears' material breach of the License Agreement and other unlawful misconduct, New Sears has deprived Stanley of its right and ability to effectively control and define its CRAFTSMAN® brand in the marketplace.

70.     By sub-branding its new line of products as "Craftsman Ultimate Collection," New Sears limits the ability of Stanley to use that same or similar sub-brand in the future. Therefore, New Sears, a mere licensee, has given itself first-mover advantage over Stanley, the

17

trademark owner, by releasing this sub-brand in the marketplace. All of Stanley's future branding and sub-branding decisions with respect to CRAFTSMAN® must now take into account New Sears' prior use of the "Craftsman Ultimate Collection," and this irreparable harm will only continue to be exacerbated the longer New Sears is permitted to use the unlawful sub-brand in advertising, marketing, and commercializing its Licensed Products.

71.     Moreover, there is a further threat of irreparable harm that New Sears might launch yet additional such sub-brands in violation of the License Agreement and trademark law, thereby further limiting Stanley's branding and sub-branding options and control over the CRAFTSMAN® brand in the future.

72.     Stanley also faces irreparable harm given that New Sears' recent unauthorized conduct creates uncertainty in the marketplace by falsely implying that New Sears, a mere licensee, has superior rights to the CRAFTSMAN® brand than Stanley, the brand owner, and those other distributors and retailers whom Stanley selects to carry CRAFTSMAN® products.  If allowed to persist, this uncertainty threatens to disrupt and irreparably harm Stanley's goodwill and advantageous business relationships with the distributors and retailers to whom Stanley currently sells, or may sell in the future, CRAFTSMAN® products.

73.     New Sears' improper alteration and combination of the CRAFTSMAN® mark and CRAFTSMAN® Shield with the words "Ultimate Collection" also confuses the public by implying that Stanley, as the owner of the CRAFTSMAN® mark and CRAFTSMAN® Shield, approved or sponsored New Sears' "Craftsman Ultimate Collection" sub-brand.

74.     In fact, New Sears' unauthorized conduct has already caused and continues to cause confusion among consumers regarding the CRAFTSMAN® brand. For example:

> a. In a social media post attached as Exhibit 9 (A) to the Complaint, a consumer asks following question of the Craftsman Tool Collectors Facebook group:

"Anyone know anything about the ***Craftsman Ultimate Collection***?" Another consumer responded, "This is just Stanley garbage repackaged and rebranded." (Exh. 9 (A)) (emphasis added).

b. In response to a social media post by New Sears about the Craftsman Ultimate Collection, one consumer responded: "The ***real*** craftsman not the garbage stanley black and decker stuff."(emphasis added). To which another consumer similarly responded, "I can tell you these new ultimate series are top notch, much better than the Stanley owned variations." (Exh. 9 (B)).

75.      Moreover, the consumer's comment, "The ***real*** craftsman not the garbage stanley black and decker stuff"(emphasis added), confirms that New Sears has caused and continues to cause CRAFTSMAN®-branded products sold anywhere but at Sears to appear  less genuine and, and therefore,  inferior. (Exh.  9 (B)) (emphasis added).

76.      By  developing  the  unauthorized  sub-brand  and  altering  and/or  using  the unlicensed composite marks, New Sears has further disrupted and impeded Stanley's right and ability, as the brand owner, to control the brand's identity and the customer's experience in a manner that fits within Stanley's broader brand strategies.  By improperly wresting control over the brand from Stanley, New Sears is presenting a blurred or otherwise distorted presentation of the brand to the marketplace that serves to sow confusion and a lack confidence in the brand among consumers.  If not stopped quickly, New Sears misconduct threatens to further erode and irreparably damage the reputation, value, and prestige of the CRAFTSMAN® brand over time.

77.      By thus depriving Stanley of its right and ability to effectively control and define its CRAFTSMAN® brand in the marketplace, and sowing confusion among consumers, in connection with the CRAFTSMAN® brand Stanley now faces the very risk of irreparable harm that the License Agreement was intended to prevent.  While the License Agreement allows New Sears to use the Licensed Marks for the "sole purpose" of enabling it to carry on its Retained Business, the contract expressly forbids New Sears from launching a new sub-brand under

altered or composite marks or unauthorized slogans and taglines.   Moreover, the License
Agreement expressly prohibits New Sears from making any statements that disparage, tarnish
and dilute the Licensed Marks.

78.     As Defendant acknowledged in the License Agreement, there is no remedy at law
adequate to prevent the irreparable harm occasioned by New Sears' breach of contract and other
unlawful misconduct, thereby necessitating the entry of a temporary restraining order and/or
preliminary and permanent injunctive relief, in addition to any other remedies afforded to
Stanley in equity or at law.

**COUNT I**
**(Breach of the License Agreement)**

79.     The allegations set forth paragraphs 1 through 78 are re-alleged and incorporated
herein by reference.

80.     The License Agreement is a valid and enforceable contract under governing New
York law.

81.     Stanley is in full compliance with its contractual obligations under the License
Agreement.

82.     By and through the course of conduct detailed in this Complaint, New Sears has
materially breached and continues to materially breach the terms of the License Agreement
including, but not limited to: Sections 5, 7(c), 7(e), and the Brand Guidelines incorporated
therein by reference.

83.     As the direct and proximate result of New Sears' material breach of contract,
Stanley is threatened with, and unless temporarily restrained and preliminarily enjoined by this
Court will continue to suffer, irreparable harm to its CRAFTSMAN® brand and Licensed Marks, as

20

well as its ability to control its reputation, goodwill and advantageous business relationships with its customers.

84.    There is no remedy at law adequate to prevent the threatened or actual irreparable harm occasioned by New Sears' breach of contract, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, in addition to any other remedies afforded to Stanley in equity or at law.

## COUNT II
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

85.    The allegations set forth paragraphs 1 through 78 are re-alleged and incorporated herein by reference.

86.    The Craftsman® mark and the CRAFTSMAN® Shield are registered with the United States Patent & Trademark Office.

87.    Stanley is the owner of these federally registered trademarks.

88.    Under the express terms of the License Agreement, New Sears is expressly prohibited from altering the registered Craftsman® mark and CRAFTSMAN® Shield or combining them with additional words or marks, so as to create a new, unlicensed composite mark.

89.    The name "Craftsman Ultimate Collection" as used by New Sears in connection with Licensed Products improperly alters and combines the licensed Craftsman® mark and CRAFTSMAN® Shield with the words "Ultimate Collection" so as to create a new, unlicensed composite mark.

90.    By offering for sale, selling, distributing, and advertising Licensed Products in interstate commerce in connection with these altered and/or unlicensed composite marks, New Sears is exceeding the scope of its license and thereby willfully infringing Stanley's federally

21

registered CRAFTSMAN® and CRAFTSMAN® Shield trademarks within the meaning of 15 U.S.C.
§1141(1).

91.     New Sears' use of the these altered and/or unlicensed composite marks are likely
to cause and/or have caused confusion or mistakes among actual or potential distributors,
retailers and consumers of CRAFTSMAN®-branded products and has been knowingly and
willfully perpetrated for the purpose confusing and deceiving said customers.

92.     As the direct and proximate result of New Sears' trademark infringement, Stanley
is threatened with, and unless temporarily restrained and preliminarily enjoined by this Court
will continue to suffer, irreparable harm to its CRAFTSMAN® brand and Licensed Marks, as well
as its ability to control its reputation, goodwill and advantageous business relationships with its
customers.

93.     There is no remedy at law adequate to prevent the irreparable harm occasioned by
New Sears' trademark infringement, thereby necessitating the entry of a temporary restraining
order and/or preliminary and permanent injunctive relief, in addition to any other remedies
afforded to Stanley under the United States trademark laws.

## COUNT III
### (Unfair Competition – 15 U.S.C. § 1125(a))

94.     The allegations set forth paragraphs 1 through 78 are re-alleged and incorporated
herein by reference.

95.     Stanley is the owner of the federally registered CRAFTSMAN® trademark and
CRAFTSMAN® Shield.

96.     By and through the course of conduct alleged in this Complaint, defendant New
Sears is likely to cause and, in fact, has caused confusion or mistakes among actual or potential
distributors, retailers and consumers as to origin, sponsorship and approval by Stanley of

22

products offered for sale, sold, distributed and/or advertised using the CRAFTSMAN® trademark and CRAFTSMAN® Shield.

97.     New Sears' conduct in this regard has been knowing, intentional and willful, and for the purpose of unfairly competing with Stanley by confusing and deceiving said actual or potential customers.

98.     As the direct and proximate result of New Sears' acts of unfair competition, Stanley is threatened with, and unless temporarily restrained and preliminarily enjoined by this Court will continue to suffer, irreparable harm to its CRAFTSMAN® brand and Licensed Marks, as well as its ability to control its reputation, goodwill and advantageous business relationships with its customers.

99.     There is no remedy at law adequate to prevent the irreparable harm occasioned by New Sears' acts of unfair competition, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, in addition to any other remedies afforded to Stanley under the United States trademark laws.

## COUNT IV
## (Trademark Dilution – 15 U.S.C. § 1125(c))

100.    The allegations set forth paragraphs 1 through 78 are re-alleged and incorporated herein by reference.

101.    Stanley is the owner of the federally registered CRAFTSMAN® trademark and CRAFTSMAN® Shield.

102.    The federally registered CRAFTSMAN® trademark and CRAFTSMAN® Shield are famous marks within the meaning of 15 U.S.C. § 1125(c), and carry with them a reputation for reliable products sold at a good value and backed by solid warranties.

23

103.   By and through the course of conduct alleged in this Complaint, New Sears has caused and is likely to cause dilution (by blurring and/or tarnishing) of Stanley's famous marks in violation of 15 U.S.C. § 1125(c).

104.   New Sears' misconduct in this regard has been knowing, intentional and willful, and for the purpose of diluting Stanley's famous marks.

105.   As the direct and proximate result of New Sears' acts of trademark dilution, Stanley is threatened with, and unless temporarily restrained and preliminarily enjoined by this Court will continue to suffer, irreparable harm to its CRAFTSMAN® brand and Licensed Marks, as well as its ability to control its reputation, goodwill and advantageous business relationships with its customers.

106.   There is no remedy at law adequate to prevent the irreparable harm occasioned by New Sears' acts of trademark dilution, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, in addition to any other remedies afforded to Stanley under the United States trademark laws.

## COUNT V
### (Trade Libel/Commercial Disparagement)

107.   The allegations set forth paragraphs 1 through 78 are re-alleged and incorporated herein by reference.

108.   By and through its publication in the press and elsewhere of the statement that New Sears is "the _real_ home of the broadest assortment of Craftsman," New Sears falsely implies that only products carried in New Sears' Channels of Retail Trade are genuine CRAFTSMAN® products or that the sale CRAFTSMAN® products elsewhere is illegitimate.   Thus, New Sears' slogan or tagline disparages and negatively reflects upon the reputation, value and

24

prestige of CRAFTSMAN® products now being marketed and sold by Stanley through other distribution and retail channels.

109.    New Sears' acts of trade libel and commercial disparagement were done knowingly, willfully, and for the malicious purpose of disparaging for commercial gain Stanley's CRAFTSMAN® products as marketed and sold through other distribution and retail channels.

110.    As the direct and proximate result of New Sears' acts of trade libel and commercial disparagement, Stanley has suffered or will suffer substantial and irreparable harm, loss and damage (including special damages) to its CRAFTSMAN® brand and Licensed Marks, as well as its ability to control its reputation, goodwill and advantageous business relationships with its customers.

## PRAYER FOR RELIEF

**WHEREFORE**, Stanley prays for judgment against New Sears and, as relief therefore, respectfully requests:

### AS TO COUNT I:

A.    A temporary restraining order, and preliminary and permanent injunctions ordering New Sears to:

> (1) immediately cease and desist any further use of the unauthorized "Craftsman Ultimate Collection" sub-brand and related altered and unlicensed composite marks in connection with the advertisement, marketing and sale of Licensed Products;

> (2) immediately cease and desist any further unauthorized use of the disparaging slogan or tagline "the *real* home of the broadest assortment of Craftsman" in connection with the advertising, marketing, promotion and sale of Licensed Products;

> (3) prompt removal of all references to "Craftsman Ultimate Collection" and the slogan or tagline "the *real* home of the broadest assortment of Craftsman" from any and all websites, social media platforms, advertisements, marketing

materials, store displays, signage or other promotional materials of New Sears, its Affiliates and/or the SHO Entities;

(4) prompt removal from all licensed Channels of Retail Trade of all Licensed Products contained in packaging, or bearing labels that refer to the "Craftsman Ultimate Collection" or the slogan or tagline "the ***real*** home of the broadest assortment of Craftsman"; and

(5) any and all other and further restraints as necessary and appropriate to prevent irreparable harm to Stanley, it business, its marks and/or its goodwill and advantageous business relationships with its customers.

B.      In addition to the injunctive relief set forth in subsection A above, an award of contract damages in excess of $75,000 to compensate Stanley for any economic injury it has suffered prior to the issuance of the requested injunctive relief; and

C.      Any and all other and further relief in equity or at law as justice and cause require.

### AS TO COUNT II:

A.      A temporary restraining order and preliminary and permanent injunctions pursuant to 15 U.S.C. §1116, enjoining New Sears from any further acts of trademark infringement by ordering that New Sears:

(1) immediately cease and desist any further use of the unauthorized sub-brand "Craftsman Ultimate Collection" and related altered and/or unlicensed composite marks in connection with the advertisement, marketing, distribution and sale of Licensed Products;

(2) prompt removal of all references to "Craftsman Ultimate Collection" from any and all websites, social media platforms, advertisements, marketing materials, store displays, signage or other promotional materials of New Sears, its Affiliates and the SHO Entities;

(3) prompt removal from all licensed Channels of Retail Trade of all Licensed Products contained in packaging, or bearing labels that refer to the "Craftsman Ultimate Collection";

26

(4) any and all other and further restraints as necessary and appropriate to prevent irreparable harm to Stanley, its business, its marks and/or its goodwill and advantageous business relationships.

In connection with this requested injunctive relief and pursuant to subsection 1116(a), Stanley respectfully requests an inclusion in said injunction of a provision directing New Sears to file with the Court, within thirty (30) days after service of said injunction, a report in writing and under oath setting forth in detail the manner and form in which he has complied with the injunction;

B.      An Order pursuant to 15 U.S.C. § 1117(a) providing for (i) the disgorgement of New Sears' profits, (ii) an award of any damages sustained by Stanley and (iii) an award of treble damages, together with an award of Stanley's reasonable attorneys' fees, costs and pre-judgment interest to the extent permitted by 15 U.S.C. §1117(a) and/or §1117(b); or

C.      In the alternative to the damages referenced in subparagraph B above, statutory damages as permitted by 15 U.S.C. § 1117(c); and

D.      Any and all other and further relief as justice and its cause require.

## AS TO COUNTS III, IV:

A.      A temporary restraining order and preliminary and permanent injunctions pursuant to 15 U.S.C. §1116, enjoining New Sears from any further acts of unfair competition by ordering that New Sears:

(1) immediately cease and desist any further use of the unauthorized sub-brand "Craftsman Ultimate Collection" and related altered and/or unlicensed composite marks in connection with the advertisement, marketing, distribution and sale of Licensed Products;

(2) immediately cease and desist any further unauthorized use of the disparaging slogan or tagline "the *real* home of the broadest assortment of Craftsman" in connection with the advertising, marketing and sale of License Products;

27

(3) prompt removal of all references to "Craftsman Ultimate Collection" and the slogan or tagline "the *real* home of the broadest assortment of Craftsman" from any and all websites, social media platforms, advertisements, marketing materials, store displays, signage or other promotional materials of New Sears, its Affiliates and the SHO Entities;

(4) prompt removal from all licensed Channels of Retail Trade of all Licensed Products contained in packaging, or bearing labels that refer to "Craftsman Ultimate Collection" and the slogan or tagline "the *real* home of the broadest assortment of Craftsman."

(5) any and all other and further restraints as necessary and appropriate to prevent irreparable harm to Stanley, its business, its marks and/or its goodwill and advantageous business relationships with its customers.

In connection with this requested injunctive relief and pursuant to subsection 1116(a), Stanley respectfully requests an inclusion in said injunction of a provision directing New Sears to file with the Court, within thirty (30) days after service of said injunction, a report in writing and under oath setting forth in detail the manner and form in which he has complied with the injunction;

B.      An Order pursuant to 15 U.S.C. § 1117(a) providing for (1) the disgorgement of New Sears' profits, (2) an award of any damages sustained by Stanley and (3) an award of treble damages, together with an award of Stanley's reasonable attorneys' fees, costs and pre-judgment interest to the extent permitted by 15 U.S.C. §1117(a) and/or §1117(b); and

C.      Any and all other and further relief as justice and its cause require.

## AS TO COUNT V:

A.      Any and all compensatory, special and/or punitive damages available to it under New York law, and any and all other and further relief as justice and its cause require.

28

**CONNELL FOLEY LLP**

By: _____
        **MICHAEL J. CROWLEY**
        **BRIAN P. MORRISEY**
*Attorneys for Plaintiff*
**STANLEY BLACK & DECKER, INC.**
888 Seventh Avenue, 9th Floor
New York, New York 10106
(212) 307-3700

           -and-

**MILES & STOCKBRIDGE P.C.**


By: */s/ Jessica duHoffman*
        **JESSICA duHOFFMANN**
jduhoffmann@milestockbridge.com
100 Light Street
Baltimore, Maryland 21202
Telephone: (410) 727-6464
Facsimile: (410) 385-3700

29

4845-2609-5497, v. 5